## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | |
| Plaintiff,       ) | |
| v.       ) | Case Number: 4:20-CR-00468 RLW (PLC) |
| THOMAS BOWLES,       ) | |
| Defendant.       ) | |

### DEFENDANT THOMAS BOWLES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

**A. History and Characteristics of Thomas Bowles**

For most of Tomas Bowles life, he has struggled with mental health and trust. The Presentence Investigation Report ("PSR") listed a series of diagnosis. At age 10, Tom was diagnosed with anxiety and obsessive-compulsive disorder, and hospitalized at Christian Northeast Hospital. *See PSR ¶ 101.* At age 17, he was diagnosed with depression and Bi-Polar Disorder, and again hospitalized at Christian Northeast Hospital. *See PSR ¶ 102.* At age 25, he was diagnosed with Bi-Polar disorder with depressed features; a non-specific mood disorder; a personality disorder with narcissistic and paranoid features; schizoaffective disorder with borderline and obsessive-compulsive personalities; and poly-substance dependence. *See PSR ¶ 105.* In 2022, at age 46, he was diagnosed with Paranoid Personality Disorder, Provisional and Generalized Anxiety Disorder, in Partial Remission. *See PSR ¶ 109.*

His conditions did not improve when adults and authority figures in his life subjected him to physical, emotional and sexual abuse. When Tom was in grade school, he was bullied by his

peers and teachers, who abused him, calling him "stupid" and hitting him with books. *See PSR ¶ 95*.

As a child in elementary school, Tom was sexually abused by a teacher and a babysitter. In that time, he was also physically and sexually abused by a scout leader while away at camp. *Id.* Tom reported the incidents, but no action was taken. *Id.* In fact, Tom felt a sense of "religious shame" from the incidents. *Id.*

The PSR recognized the aforementioned mental-health diagnosis and abuse as factors that may warrant a variance and imposition of a non-guideline sentence, based on Tom's history and characteristics under 18 U.S.C. § 3553(a). *See PSR ¶ 154*.

The abuse and Tom's mental-health disorders often led to a distrust of authority figures in his life, even with certain lawyers that previously represented him. In 2002 Tom was convicted of various offenses outlined in Paragraph 85 of the PSR. Tom feels he was not well-represented by his attorney, Paul D'Agrosa, believing that he was not given time to review the Presentence Investigation Report prepared by the Missouri Board of Probation and Parole, asserting that it was taken from him before he could finish reading it. *See Docs. ## 165 and 189*. Again, in 2012, Tom entered a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) to the conviction referenced in Paragraph 88. After a review of the case with his attorney, and observed systemic issues with St. Charles County law enforcement, he felt an *Alford* plea was his best option. *See Doc. # 227*. The PSR also recounts troubles Tom had in sex-offender treatment administered by the State of Missouri. *PSR ¶ 85*. While undergoing treatment, Tom felt he was singled-out by counselor's and treated unfairly due to other members of his therapy circle committing violations that were ignored by counselors.

In this case, Tom took a certain amount of strategy into his own hands. He wants the Court to know that it was never his intention to take the instant matter to trial. Rather, he took it upon himself to read books that critique the criminal justice system and provide advice on how to navigate it. He now realizes that this was a mistake. A sampling of those books is attached hereto as "Exhibit A". A number of these books advised defendant's to "hold out" as long as possible until a more lenient recommendation was offered from the prosecutor. Others took a cynical approach to the criminal-justice system, advising that lawyers do not have their client's best interests in mind. Tom took these statements to heart, and pushed this case as far as he could, without the intention of taking this matter to trial.

Mr. Bowles has remained in U.S. Marshals custody, since August 21, 2020. Prior to his detention in this case, he was living with his mother and father in St. Charles County, Missouri. *See PSR ¶ 97*. His father was an important and stabilizing presence in his life. However, when his father died of pneumonia in May of 2019, Tom's life was shaken. He began drinking in excess. *See PSR ¶ 111*. Tom recalled in the PSR, that prior to his arrest that he was "drinking at home often," and mixing alcohol with Ambien on a daily basis. *Id.* The alcohol did nothing to help his mental health, and his condition was worsened by the isolation of the COVID-19 pandemic.

**B. Guideline Analysis**

In this case, Tom pled guilty to Count I: Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a); Counts II and III: Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b); Count IV: Production of Child Pornography in violation of 18 U.S.C. § 2251(a); and Count V: Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2).

The range of punishment to Count I: ten years to life; Counts II and III: ten years to life; Count IV: twenty-five years to fifty years; and Count V: fifteen years to forty years. The Court may impose supervised release terms for each count of not less than five years up to a term of life.

Per the Guilty Plea Agreement (Doc. # 208), the parties agreed on an estimated total offense level of 39. However, also pursuant to the Guilty Plea Agreement, the Defendant reserves the right to challenge a two (2) point enhancement for obstruction of justice, per U.S.S.G. § 3C1.1. Defendant has since objected to the two-point enhancement. *See Doc. # 240*. Without the obstruction application, the base offense level would be 37.

The PSR also calculated a base offense level of 39, which included the adjustment for obstruction. *See PSR ¶ 79*. The PSR also calculated a criminal history score of 12 (Category V), resulting in a guideline range of 360 months to life imprisonment. *See PSR ¶ 132*.

Mr. Bowles further ask the Court to consider a guideline range that does not include the automatic application of Category V, per U.S.S.G. § 4B1.5(a)(2)(B). Should the Court grant Defendant's objection challenging criminal history points, the criminal history score would be reduced to 9 (Category IV). An offense level of 37 in Category IV results in a guideline range of 292 to 365 months.

C. **Advisory Nature of Guidelines**

A defendant's guideline range is advisory. *United States v. Booker*, 543 U.S. 220, 244 (2005). Under *Booker* and its progeny, sentencing courts may not treat the applicable guideline range as presumptively reasonable. *Nelson v. United States*, 128 S.Ct. 558, 564 (2007). In the pursuit of a just sentence, district courts may devise policies and impose sentences that are at odds with the policies articulated by the Federal Sentencing Guidelines. *Spears v. United States*,

4

129 S.Ct. 840 (2009). Regardless of what the applicable guideline range suggests, 18 U.S.C. § 3553(a) directs the district courts to impose a sentence no longer than necessary to accomplish the purposes of punishment pursuant to § 3553.

The PSR identified Tom's mental-health history and abuse he suffered as reasons that may warrant a sentence below the guideline range. *PSR ¶ 154*. Tom has been combating a series of mental health diagnoses since he was 10 years old. *See PSR ¶ 101*. He was most recently diagnosed with paranoid personality disorder and provisional and generalized anxiety disorder. *See PSR ¶* 109. Tom also asks the court to consider the fact that he entered a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), *See PSR ¶ 88*, when weighing his criminal history. In that case, Tom pled guilty to the offense of Assault in the 2nd Degree, believing that the weight of the state's case, among other factors, made contending it at trial impractical. Were the Court not to apply the criminal history points from this conviction, his criminal history score would be reduced to six (6) (Category III), and his guideline range would be 262 to 327 months.

Tom is now 48-years old. A sentence of 300 months (25 years) would cause Tom to be released when he is nearly 70 years old. A 2017 report issued by the United States Sentencing Commission found that reconviction rates for offenders over the age of 65 dropped to 6.5%[1]. The reality is that the minimum available sentence will see Tom incarcerated until he is a senior citizen. The study shows that as individuals get older, their propensity to reoffend goes down. One of the goals of § 3553(a) is to protect the public from further crimes. As Tom gets older, and enters his 60s and 70s, the rate of reoffending is considerably diminished. The Court also

---

[1] *The Effects of Aging on Recidivism Among Federal Offenders*, United States Sentencing Commission, 2017 (https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders)

has at its discretion a wide berth in instituting a term of supervised release: 5 years to life.  His age upon release combined with supervision only reduces the possibility of reoffending.

### D. Conclusion

Tom has a long-documented history of struggling with his mental health.  His condition was only made worse when the adults in his life subjected him to mental, physical and sexual abuse.  In this case, the minimum sentence of 300 months (25 years) is a significant punishment.  It will incarcerate Tom into his senior years, and satisfies the factors set forth in § 3553(a).

Respectfully submitted,

COUNSEL FOR DEFENDANT

 /s/Zachary J. Borowiak
ZACHARY J. BOROWIAK, MO58855
Attorney for Defendant
225 S. Meramec, Ste. 1100
St. Louis, MO 63105
(314) 537-2351 (Telephone)
(314) 269-1042 (Facsimile)
borowiaklaw@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a true and accurate copy of the foregoing was served upon all counsel of record on this 28th day of March, 2024, via the Court's electronic filing system.

       /s/Zachary J. Borowiak