(1-10-24) ~~[redacted]~~ ㉟

BOOK TITLE: "PUNISHMENT WITHOUT TRIAL."
BY: CARISSA BYRNE HESSICK, PROFESSOR of LAW.



## CHAPTER THREE

## "IT'S A BUSINESS DECISION"

### S.E.C.

Harry owned a small business that depended on investments.* When the bottom fell out of the U.S. economy in 2009, some of his investors lost money. One of those investors was friendly with an official at the <u>Securities and Exchange Commission,</u> the federal agency that <u>regulates the stock market and other</u> investment activities. After that investor complained to his friend, the SEC raided Harry's company over a holiday weekend, taking all of the company's computers and records. Those computers and records still haven't been returned.

In addition to the SEC investigation, Harry and his partners were charged with fraud. Federal prosecutors threatened Harry and his partners with more than two hundred years in prison. All of Harry's money had been seized by the government, and so he had to borrow money to hire a lawyer. Harry explained to his lawyer that he didn't do anything wrong. He didn't defraud any of his investors; it was just bad luck. Harry's lawyer talked to the prosecutors, but they were only willing to offer a plea deal of twenty years in prison. So (Harry) and his partners decided to go to trial.

☆ ☆ <u>As the trial date got closer, the prosecution started to offer better</u> ☆ ☆
☆ plea deals. Harry and his partners kept insisting they hadn't done anything ☆
☆ wrong—they'd followed all of the SEC's rules and they hadn't defrauded

---
* Harry is not his real name.

(ISBN: 978-1-4197-5030-4) (over) ㉟

*(QUOTE SENT TO COURT.)*

anyone—so they wanted to tell the jury what happened. But their lawyer said that might not matter. He said that the jury was not going to understand the SEC rules. He'd seen juries who thought that defendants were probably innocent, but then they convicted on one count just in case.

The lawyer explained to Harry that, if the jury convicted on even one small count, he was still in big trouble. Even if you are acquitted of one crime, federal law allows judges to give you a higher sentence if they think you probably committed other crimes. For example, imagine a prosecutor charges you with burglary and murder; the jury acquits you of murder but finds you guilty of burglary. If the prosecutor convinces the judge that most of the evidence suggests you are guilty of the murder, then the judge will give you a very high sentence—probably the highest allowed by law—on the burglary charge. Even though you won at trial, you'd lose at sentencing.

Harry knew that, if the jury acquitted him of most charges, the judge would probably give him the maximum punishment—or close to it—on any charges for which he was convicted. But he and his partners still wanted to go to trial. He knew that he was innocent. And as he put it, "Lawyers spend their lives convincing people to plead guilty."

Harry's lawyer understood that his clients thought they were innocent. But he couldn't understand why they were insisting on going to trial rather than just trying to negotiate the best plea deal possible. "At some point the lawyer was yelling at us, telling us we were ruining our lives," Harry recounted. "'This isn't about guilt or innocence,' he said. 'It's a business decision.'"

Finally, the prosecutors offered a deal that Harry felt he couldn't refuse. Although they had initially insisted that Harry serve fifteen or twenty years in prison, when it became clear that Harry was willing to go to trial, prosecutors offered him a much better deal: only two years.

Harry's resolve to take his case to trial began to waiver. "You dream of going to trial and winning," Harry said, "but what do you really win? You win your innocence. But in a lot of ways you still lose. And if you lose at trial, then you leave your family with nothing."

Even though he still adamantly believed that he was innocent of any wrongdoing, Harry accepted the plea deal. He had a good lawyer. He had a good case. His lawyer didn't even think that the things Harry had done were actually illegal. But Harry realized the inevitable: the deal was too good to pass up.

(36)

↳ PUNISHMENT w/o TRIAL ↵
BY: CARISSA B. HESSICK

Prosecutors should use their power to reach bargains that are more just. And they should dismiss charges when there seem to be things that are wrong with their cases rather than just offering defendants better deals. In addition, prosecutors should criticize their colleagues when they fail to do the same.

Defense attorneys have much less power than judges and prosecutors to change the system. But they can tell their clients' stories and let the public know about the injustices that are being done in their name.

Actually, *all of us* should let people know about the injustices of our system—that we have created a system that is designed to impose punishment without trial. Letting people know was the reason I wrote this book. I want people to know what actually happens in our criminal justice system. I want them to know that people plead guilty because the system has been designed to pressure everyone—the guilty and the innocent alike—into giving up their constitutional right to a trial. I want people to know that our system has given up on finding the truth in criminal cases. Instead, it just tries to be efficient.

Plea bargaining didn't cause all of the problems with the criminal justice system. Juries convicted innocent people and sentences were often too harsh even before plea bargains were widely accepted. But plea bargaining has introduced new problems and made some of those old problems worse.

Convictions no longer tell us what a defendant actually did; they simply represent the end of a negotiation between lawyers. A defendant who pleads guilty to a low-level assault in Ohio may have committed that assault, he may have committed a rape, or he may be innocent of any crime. We do not know, and widespread acceptance of plea bargaining seems to tell us that we should not care.

Plea bargaining also stops us from making other parts of the criminal justice system better. Plea bargaining doesn't make society face the consequences of all of the crimes we've added to the books or the sentences that we've repeatedly lengthened. Instead, of having to give everyone who is swept up in the system a fair chance to show they are innocent, we cycle them through the courtrooms quickly, promising to knock months, years, or even decades off sentences that were much longer than they needed to be.

Plea bargaining also doesn't prompt us to make our system more accurate. If a jury mistakenly convicts an innocent person after a trial, we can go back and look at the witnesses who testified and try to figure out what went wrong. But when we discover that an innocent person has pleaded guilty,

ISBN: 978-1-4197-5030-4
(USED IN "LAW CLINIC")

*→ WHAT SOME DEFENSE ATTORNEYS DO TO THEIR OWN CLIENTS! NOT ALL!*

jurors to believe that he is decent and kind, when in fact his only goal is to deprive a desperately injured person of his chance at justice. He reminded me of the Judas goat in the slaughterhouse. The goat is a smarter animal than the sheep. In fealty to his master, the Judas goat leads the sheep to the killing house. The sheep innocently follow, having put their full faith and trust in the goat. Once in the killing house, the goat is released to lead yet another flock of sheep to slaughter. How could I reveal the insurance company lawyer's treachery to the jury? How could I win?

I found myself completely obsessed with my fear of this handsome charmer, who was the epitome of wrong to me. I talked to every lawyer who would talk to me about him. The more I listened, the more I discovered that he had no apparent Achilles' heel. Moreover, everyone seemed to like him, even those whom he had beaten. I lay awake at night devising scores of arguments to the jury. At last I came up with this one.

"Ladies and gentlemen,

"Mr. Randolph Hightower is a mighty nice man. But when this case is over he will suffer neither loss nor gain from anything you do. His fee from his client will be the same, win or lose. No matter what your verdict, when this case is over he will simply pull out another file and try another case for the same client he represents here today. [We are not permitted by law to tell the jury that the client is really the insurance company.]* And when Mr. Hightower walks into court tomorrow, despite what the facts may be in that case, he will have the same nimble smile for the next jury, the same perfect demeanor, the same kindly exterior. It frightens me. No matter what the facts, no matter where justice lies, no matter how evil his client or his cause, he will always remain the same—kindly appearing, marvelously poised, unpretentiously compelling—in short, wonderful.

"I am afraid you will like him more than you like me, for, in truth, he is more likable than I. I am afraid you will feel closer to him than you do to me, for indeed, he seems like the kind of man you would like to have as a friend, while I am sometimes abrasive and difficult to approach.

---

*Most judges who care more for corporate profit than the right of people to justice believe juries will award a greater sum to the injured if the jurors know that an insurance company, not the defendant, will pay the bill.

*"HOW TO ARGUE"...*
*BY: GERRY SPENCE*
*ISBN: 978-0-312-14477-7*

**Exhibit bibliography**

Pages 1-3
Clarissa Byrne Hessick, *Punishment without Trial—Why Plea Bargaining is a Bad Deal*, 35, 36, 222 (Abrams Press, 2021).

Page 4
Gary Spence, How to Argue and Win Every Time, 35 (St. Martin's Griffin, 1992)